UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOMINICK SERVEDIO, on behalf of
himself and others similarly situated,

                 Plaintiff,

  -against-

STATE FARM INSURANCE COMPANY,

                 Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-1458 (FB) (VVP)

*Appearances*:
*For the Plaintiff*:
HARRY I. KATZ, ESQ.
VICTORIA L. WEINMAN, ESQ.
61-25 Utopia Parkway
Fresh Meadows, NY 11365

*For the Defendant*:
EVAN H. KRINICK, ESQ.
MICHAEL P. VERSICHELLI, ESQ.
MAX SAULTER GERSHENOFF, ESQ.
Rivkin, Radler & Kremer
926 RXR Plaza
Uniondale, NY 11556

**BLOCK, Senior District Judge:**

      Dominick Servedio claims that the means by which his automobile insurer, State Farm Insurance Company ("State Farm"), offers additional Personal Injury Protection ("PIP") coverage constitutes a deceptive trade practice and false advertising in violation of sections 349 and 350 of the New York General Business Law. He also asserts a claim for fraud under New York common law.[1] He seeks to represent a nationwide class of all State Farm insureds who purchased similar coverage.

---

[1] He has withdrawn a second common-law claim for breach of contract. *See* Pl.'s Mem. of Law 12.

Pursuant to Federal Rule of Procedure 12(b)(6), State Farm moves to dismiss Servedio's amended complaint. It principally argues that Servedio cannot state a claim under sections 349 and 350 because the policy language for its additional PIP coverage is mandated by the New York Department of Insurance ("DOI") and, therefore, uniform throughout the industry.

For the following reasons, the Court concludes that DOI's approval of the policy language does not, as a matter of law, preclude Servedio from pursuing the claim that State Farm's implementation of the language amounts to a deceptive trade practice. It further concludes, however, that Servedio cannot state a cognizable claim for common-law fraud.

# I

For purposes of this motion, the Court must take as true all of the allegations of Servedio's amended complaint, and must draw all inferences in his favor. *See Weixel v. Board of Educ.*, 287 F.3d 138, 145 (2d Cir. 2002). The following facts are presented accordingly.

Servedio maintained State Farm insurance policies on three different automobiles. As required by New York law, each policy provided PIP (also known as "No Fault") coverage, under which State Farm promised to reimburse the "basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle." Not. of Mot. to Dismiss,

2

Ex. 1 (Policy, "Mandatory Personal Injury Protection Endorsement").[2]  "Basic economic loss" was defined as (1) medical expenses, (2) 80% of lost wages, up to $2,000 per month for up to three years, and (3) other "reasonable and necessary" expenses of up to $25 per day for up to one year; the total benefit payable was $50,000.  In addition to the named insured and his or her relatives, "eligible injured person" was defined to include any person injured by the insured automobile in New York State and any New York State resident injured by the insured automobile outside the state.

Each policy also provided an *optional* PIP benefit under which State Farm promised to pay "additional first-party benefits to reimburse for extended economic loss sustained by an eligible injured person."  *Id.* ("Additional Personal Injury Protection Endorsement").  Under this provision, the definition of "eligible injured person" was expanded to include any passenger (regardless of residence or accident location) in any vehicle operated by the insured or his or her relatives.  "Extended economic loss" was defined as the difference between basic economic loss under the mandatory PIP provision and basic economic loss as "recomputed in accordance with the time and dollar limits set out in the schedule."  *Id.*  For the level of coverage selected by Servedio (the "Q1" level), the time and dollar limits in question were up to $2,000 per month for up to three years for lost wages, up to $25 per day for up to one year for other expenses, and up to $50,000 in

---

[2] Though the policies are not attached to the amended complaint, the Court may consider them because they form the basis for Servedio's claims.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court may consider documents "integral to the complaint" in ruling on Rule 12(b)(6) motion (internal quotation marks omitted)).

3

total payments.³ In other words, the optional PIP coverage was subject to the same time and dollar limits as mandatory PIP coverage. Servedio paid an additional premium for the optional coverage: $1.34 on the first policy, $0.90 on the second and $1.04 on the third.

On November 8, 2008, Servedio was involved in an automobile accident, as a result of which he made a claim for PIP benefits. After his $50,000 in mandatory PIP benefits were exhausted, State Farm refused to make any additional payments under the optional PIP provision.

This suit followed. State Farm's defense is succinctly set forth in its supporting memorandum of law:

> [I]f the "Q1" additional PIP option is purchased, the difference between $50,000.00 and $50,000.00 is $0, so no higher first party limits are available -- though coverage is still enhanced through the broader definition of "eligible insured person[.]"

Def.'s Mem. of Law 7.

## II

Servedio invokes the Court's jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which gives district courts jurisdiction over state-law class actions where more than $5 million is in controversy, even if there is only minimal diversity

---

³At the "Q2" and "Q3" levels, by contrast, the limits for lost wages and other expenses were raised to $4,000 per month and $50 per day, respectively. In addition, the maximum total benefit was raised to $100,000 (at the Q2 level) and $150,000 (at the Q3 level).

between parties.  *See Holster v. Gatco, Inc.*, 618 F.3d 214, 216 (2d Cir. 2010).[4]  As the party invoking federal jurisdiction, Servedio has the burden of showing a "reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Scherer v. Equitable Life Assurance Soc.*, 347 F.3d 394, 397 (2d Cir. 2003).

At oral argument, the Court questioned whether the proposed class was large enough to create the requisite "reasonable probability" that small individual claims for premium refunds (less than $4.00 in Servedio's case) would, in the aggregate, reach the $5 million threshold.  *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("[W]e have an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte.").  In response to the Court's query, State Farm commendably acknowledged that it had collected $4,146,882.10 in premiums for Q1 coverage during the six-year limitations period applicable to Servedio's fraud claim.  Given that his statutory claims contemplate treble damages and attorney's fees, *see* N.Y. Ins. L. § 349(h), and that he seeks, in addition, punitive damages, the Court is satisfied that Servedio has established a "reasonable probability" that his proposed class action seeks monetary relief of more than $5 million.  Therefore, it has jurisdiction over the action and can address State Farm's motion to dismiss.

### III

**A.  Statutory Claims**

---

[4]Specifically, the minimal diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  It is undisputed that Servedio's class allegations establish minimal diversity.

With his breach of contract claim out of the equation, Servedio's central claim is that State Farm's offering of additional PIP, at least at the Q1 level, violates section 349 of New York's General Business Law, which prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."[5] To make out a claim under section 349, a plaintiff must allege three things: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).[6] State Farm argues that Servedio has not adequately alleged any of the three.

### 1. Consumer-Oriented Conduct

With respect to the first element, State Farm invokes the rule that "[p]rivate contract disputes, unique to the parties, [do] not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). More particularly, it cites several cases for the proposition that a dispute concerning the scope of insurance coverage does not provide a basis for a section 349 claim. *See* Def.'s Mem. of Law 20.

---

[5] Servedio also invoked section 350, which reiterates the same prohibition in the specific context of false advertising. *See Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.") Since the amended complaint does not contain any allegations regarding advertising, the Court infers that the real basis for Servedio's claim is section 349 only.

[6] All agree that New York law governs.

Servedio has made it clear, however, that his suit is not a dispute about the additional PIP coverage afforded at the Q1 level. As noted, he has abandoned his breach of contract claim; he presumably did so because he recognized that he had received all the coverage he was entitled to. *See Mack v. State Farm Mut. Auto. Ins. Co.*, 793 N.Y.S.2d 794 (2d Dep't 2005); *Clark v. Travelers Indem. Co.*, 532 N.Y.S.2d 201 (Sup. Ct. Allegany County 1988) (both rejecting breach of contract claims regarding Q1-type provisions). Thus, instead of seeking additional coverage, he now seeks a refund of the premiums he paid (along with statutory enhancements) for coverage that, he claims, was illusory. *That* claim is not a private contract dispute, but a broader challenge to the way State Farm offers Q1 coverage to all of its insureds. Such conduct is "consumer-oriented" within the meaning of section 349. *Cf. Oswego Laborers' Local 214*, 85 N.Y.2d at 26 (account-opening practices held to be "consumer-oriented" because "[t]he account openings were not unique to these two parties").

### 2. *Materially Misleading*

With respect to the second element, conduct is "misleading in a material way" if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214*, 85 N.Y.2d at 26  That standard encompasses "a far greater range of claims" than common-law fraud. *Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 209 (2001); *see also Stutman*, 95 N.Y.2d at 29 ("A deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349."). State Farm argues that its alleged conduct cannot have been materially misleading because the terms

7

of Q1 coverage were (1) "fully disclosed," Def's Mem. of Law 23, and (2) defined in terms approved—indeed, required—by DOI.

The Court disagrees that the policy "fully discloses" the nature of Q1 coverage in such a way as to prevent a reasonable consumer from being misled. The language of the endorsement implies that the additional PIP option expands the mandatory coverage by (1) broadening the definition of "eligible injured" person and (2) providing reimbursement for "extended"—as opposed to "basic"—economic loss. At the Q1 level, however, "expanded economic loss" is precisely the same as "basic economic loss," hardly an intuitive understanding of the word *extended*.

DOI does not require State Farm to define Q1 coverage as it does. It mandates the endorsement language to be used, but does not purport to assign the numerical limits to the coverage. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.3 n.11 ("Companies may substitute the appropriate term, reference or language for the matter set out in brackets."). Indeed, a 2008 opinion letter by DOI's Office of General Counsel states that an additional PIP endorsement "must confer an additional benefit on the insured by altering the time and/or dollar limits available under [mandatory] PIP." OGC Op. 08-05-17 (May 15, 2008), *available at* http://www.ins.state.ny.us/ogco2008/rg080517.htm (last visited Sept. 13, 2011). Though not binding, the letter represents DOI's official position, *see id.*, and accords with the Court's view that State Farm's Q1 coverage—which does not alter any of those limits—is likely to mislead reasonable consumers as to what they are paying for.

*3. Injury*

To satisfy the third element, a plaintiff's alleged injury "must be independent of the loss caused by . . . breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). State Farm argues that Servedio's explicit allegation of injury — "Plaintiff and the Class were injured by defendant's conduct," Am. Compl. ¶ 52 — is conclusory, and that the only injury that can be inferred is his "failure to receive the additional PIP benefits for which he allegedly bargained." Def.'s Mem. of Law 24.

The Court agrees that Servedio's existing allegation is insufficient. Rather than going through the time-consuming process of granting leave to amend the amended complaint, however, the Court will simply interpolate into it the alleged injury that has since become clear. *See, e.g.*, *Ortiz v. City of New York*, 755 F. Supp. 2d 399 (E.D.N.Y. 2010) (using that procedure). As explained above, Servedio seeks to recover the additional premium he paid as a result of State Farm's alleged deceptive practices. That injury is distinct from the damages he would recover in a breach of contract action and, therefore, suffices as a cognizable injury under section 349.

**B. Common-Law Fraud**

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). In pleading fraud, a plaintiff in federal court must comply with Federal Rule of Civil Procedure 9(b), which requires that "a party must state with

10

particularity the circumstances constituting fraud or mistake." *See Hanna v. Plumer*, 380 U.S. 460, 469–71 (1965) (Federal Rules of Civil Procedure continue to apply in diversity cases). Thus, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

State Farm contends that Servedio's amended complaint does not satisfy the requirements of Rule 9(b). The Court agrees. Unlike the failure to specify an injury in the section 349 claim, however, amendment will not save Servedio's fraud claim.

As State Farm points out, a "fraud claim must rest on representations that are extraneous to the parties' agreement." Def's Mem. of Law 19 (citing *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996)). A plaintiff relying on representations intrinsic to an agreement is limited to a breach of contract claim. *See RGH Liquidating Trust v. Deloitte & Touche, LLP*, 851 N.Y.S.2d 31, 32 (1st Dep't 2011) ("[P]laintiff's fraud claims were properly dismissed as duplicative of its breach of contract claim, since they are based on alleged fraudulent misrepresentations related to defendants' obligations under their agreements[.]"). As the crux of Servedio's claim—the description of Q1 coverage—is obviously intrinsic to the policy, he cannot maintain a separate claim for common-law fraud.[7]

---

[7] As noted, section 349 prohibits more than fraudulent conduct. Thus, there is no analogous obstacle to pursuing a section 349 claim even when the defendant has technically complied with its contractual obligations.

11

**IV**

For the foregoing reasons, State Farm's motion to dismiss is granted with respect to Servedio's common-law fraud claim, but denied with respect to his claim under section 349 of the New York General Business Law.  Therefore, the parties shall proceed with discovery and, in due course, to the issue of whether the class Servedio proposes to represent should be certified in accordance with Federal Rule of Civil Procedure 23.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 19, 2011